UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS

| | |
|---|---|
| **LIGHTSPEED MEDIA CORPORATION,** ) | |
| ) | Case No. **3:12-CV-00860-WDS-DGW** |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | |
| **LUCAS SHASHEK,** ) | |
| ) | |
| **Defendant.** ) | |

**BRIEF IN SUPPORT OF DEFENDANT'S
<u>MOTION TO DISMISS COMPLAINT</u>**

COMES NOW Defendant, Lucas Shashek ("Defendant"), by and through counsel, and for his Brief in Support of His Motion to Dismiss Plaintiff Lightspeed Media Corporation's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1, states:

**I. <u>INTRODUCTION</u>**

**A.    Plaintiff's Complaints in Illinois and across the U.S.**

Plaintiff's Complaint was filed on July 2, 2012. (Document #2). Plaintiff is the "owner and operator of an adult entertainment website." (Complaint, ¶ 9). The website is made available to individuals who "sign-up and pay a fee to access Plaintiff's owned content." (***Id.***) The instant case is not the first of its kind in the U.S. It has become apparent that Plaintiff's established business model is to use mass litigation to extract settlements from individuals regardless of the merit of the claim. To date, Plaintiff has filed at least five cases, making similar allegations, against a combined total of over 7,672 defendants, none of which appear to have been adjudicated

on the merits.[1] In each of these cases, Plaintiff alleges that John Doe[s] used "hacked" passwords to gain unauthorized access to Plaintiff's website and downloaded and disseminated Plaintiff's content. Plaintiff has now apparently changed litigation tactics to sue single defendants rather than naming numerous "John Does" in a single complaint.[2]

Plaintiff seeks to recover against this Defendant based upon acts allegedly committed by an unidentified person making use of the Internet connection in Defendant's home on or around 3:30 a.m. on September 25, 2011. Plaintiff alleges that the actor gained unauthorized access to files on a website owned and operated by Plaintiff by using a "hacked" username and password combination. The actor is then alleged to have distributed "access information" and content from Plaintiff's website to other users who were not authorized to access those files. Plaintiff seeks recovery in Count I (under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030), Count II (for

---

[1] *Lightspeed Media Corp. v. John Does, 1-9*, 4:2011-cv-02261 (N.D. Cal. 2011); *Lightspeed Media Corp. v. John Does 1-1000,* 1:10-cv-05604, 2011 U.S. Dist. LEXIS 35392 (N.D. Ill. 2010); *Lightspeed Media Corp. v. John Does 1-160,* No. 2011-34345-CA-01 (Fla. Cir. Ct., filed February 14, 2012); *Lightspeed Media Corp. v. John Doe,* No. 2012-5673-CA-01 (Fla. Cir. Ct., filed February 14, 2012); and *Lightspeed Media Corp. v. Doe,* No. 11-L-0683 (Ill.Cir. Ct. Jan. 18, 2012). (Prenda Law a/k/a Steele Hansmeier PLLC for plaintiff in all matters).

[2] This change in tactics may have been in response to an Illinois Supreme Court decision (No. 114334) in the case originally filed in Illinois Circuit Court, before the Honorable Robert P. Lechien, *Lightspeed Media Corporation v. John Doe*, No. 11 L 683, which directed the Circuit Court to vacate its orders of May 12, 2012, and to enter an order allowing the motion to quash subpoenas issued therein by Lightspeed, that had been filed by movants AT&T Internet Services, et al.

conversion), Count III (for unjust enrichment) and Count IV (for breach of contract) from Defendant based on the allegation that Defendant personally committed the acts described above. Alternatively, in Count V for negligence, Plaintiff alleges that Defendant negligently allowed an unknown third party to make use of the Internet connection in Defendant's home, who committed the acts described above. Plaintiff argues that Defendant should be held liable for the alleged acts of this unknown third party on two alternative theories. First, Plaintiff alleges that Defendant failed to prevent the third party from making unauthorized use of Defendant's Internet connection. Second, Plaintiff alleges that Defendant allowed the third party to use Defendant's Internet connection, but either knew or should have known of the third party's actions and failed to monitor the third party's usage of Defendant's Internet connection for signs of illegal activity. (See, Count V, ¶¶ 48-58).

B.   Technical Background

   1.   Internet Protocol (IP) Addresses.

Any subscriber of an internet service provider (ISP), such as this Defendant, who connects his computer to the internet via the ISP is assigned an IP address. *See, e.g.*, **U.S. v. Heckenkamp**, 482 F.3d 1142, 1144 (9th Cir. 2007). In addition to the subscriber's IP address, the ISP's network is also assigned its own IP address. *See e.g.*, **LVRC Holdings v. Brekka** 581 F.3rd 1127, 1130 (9th Cir. 2009).

The purpose of an IP address is to route traffic efficiently through the network. It does not identify the computer being used or the user. The role of IP addresses has been characterized as follows: "a name indicates what we seek. An address indicates where it is. A route indicates how to get there."[3] Although, Plaintiff identifies a subscriber of the account that it alleges has infringed on its website content, trying to us an IP address as a window through which the Plaintiff can see

3

the *identity* of an actual infringer is futile. What Plaintiff sees instead is a router or wireless access point – not who did it. Consequently, an IP address, alone, is not a reasonable basis to believe that a particular subscriber has infringed on Plaintiff's website content. A subscriber can be misidentified in multiple ways as an infringer without having infringed, including: (1) by spoofing;[4] or (2) if a subscriber has a dynamic IP address through a website host and is sharing an IP address with several other subscribers[5]; or (3) when an interloper with wireless capability uses the subscriber's Wi Fi network to access the internet, giving the impression that the subscriber is infringing [6].

Commenting on the MSNBC article by Carolyn Thompson, *supra*, an Illinois District Court judge said:

> Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect, as illustrated in the MSNBC article. The infringer might be the subscriber, someone in the subscriber's

---

[3] For "IP address", *see e.g.*, http://en.widipedia.org/wiki.ip_address (last visited August 3, 2012).

[4] See *e.g.*, "IP addresses spoofing" http://en.wikipedia.org/wiki.ipaddressspoofing (last visited August 3, 2012) in which the term "IP address spoofing" refers to the creating of IP packets with a forged source IP address, called spoofing, with the purpose of concealing the identity of the sender or impersonating another computing system.

[5] "Web hosting service, see e.g., http://en.wikipedia.org/wiki/web_hosting_service.

[6] See e.g., Carolyn Thompson article, **Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks** (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/.

household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.

***VPR International v. Does 1-1017***, 2011 WL 8179128 (C.D. Ill. April 29, 2011). There, VPR filed a motion to certify for interlocutory review the court's denial of its motion for expedited discovery, seeking certification of a single question of law, *to wit*: in that Defendants' identities are unknown to the Plaintiff, and each Defendant is associated with an Internet Protocol (IP) address and Internet Service Providers (ISPs) know the identity and contact information associated with each IP address, "Is the Plaintiff entitled to discover this information by serving ISPs with subpoenas *duces tecum* under Fed.R.Civ.P. 45?" The court denied the motion.

Similarly, serious issues exist in this case concerning the reliability and credibility of the allegations asserted by Plaintiff in its Complaint. Upon information and belief, Plaintiff operates numerous pornography websites. It's President and Director is Steve Jones. Its main offices are located at 4402 North Arcadia Dr., Phoenix, Arizona 85018, according to the Arizona Corporation Commission, Public Access System. Plaintiff "retained" Arcadia Data Security Consultants, LLC ("Arcadia") to identify IP addresses associated with the use of hacked passwords to access Plaintiff's websites and content. (See Complaint, ¶¶ 15-18). Arcadia's address, however, is also 4402 North Arcadia Drive, Phoenix, Arizona 85018, the same as Plaintiff's. Arcadia's named member is also Steve Jones, according to the Arizona Corporation Commission. The software used by Arcadia was also apparently developed by Steve Jones. In essence, Plaintiff's principal, Steve Jones, retained Steve Jones to use Steve Jones' software to identify IP addresses associated with compromised passwords.

5

## II. ARGUMENT

### A. LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See* **Murphy v. Walker**, 51 F.3d 714, 717 (7th Cir.1995). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard contained in Rule 8 does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. **Ashcroft v. Iqbal**, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), *citing*, **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 555, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. **Ibid.** Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

A well pled set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.,* 127 S.Ct. at 1965. Further, to be cognizable, the factual allegations contained within a complaint must raise a claim for relief "above the speculative level." *Id.*

### 1. Computer Fraud and Abuse Act ("CFAA").

Count I of Plaintiff's Complaint alleges a violation by Defendant of the Computer Fraud and Abuse Act ("CFAA"). Section 1030(g) of the CFAA states that "any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." It goes on to state that such civil action may be brought "only if the conduct involves 1 of the factors set forth in sub clauses (I), (II), (III), (IV), (V), of subsection (c)(4)(A)(i). Damages for violation involving only conduct described in subsection (c)(4)(A)(i) are limited to economic damages." Hence, the violations alleged in Plaintiff's Complaint must fall under that subclass and would therefore be limited to economic damages.

It is necessary for Plaintiff to plead both damage *and* loss in order to properly allege a CFAA violation and overcome a motion to dismiss. ***Garelli Wong & Associates, Inc. v. Nichols***, 551 F.Supp.2d 704, 708 (N.D. Ill. 2008). Here, not only does Plaintiff fail to specify the particular fraud under the CFAA that Defendant allegedly performed, Plaintiff claims "statutory damages and reputational injury" but the CFAA provides for no such remedies. (See 18 USC § 1030(g); Complaint ¶ 29).[7]

---

[7] None of the seven species of claims allowed under CFAA subparagraph (a) appear applicable to Plaintiff's claims against Defendant. *See*, 18 U.S.C. §1030 (a) ¶¶1-7. Subsection (a)(1) concerns information relating to national defense or foreign relations; (a)(2)(A) involves information contained in a financial record and financial institution; (a)(2)(B) involves any information from

Further, Plaintiff fails to show sufficient facts illustrating that a loss aggregating to at least $5,000.00 has occurred. A Plaintiff must allege that (1) a CFAA- qualifying loss aggregating at least $5,000.00 occurred, and (ii) this loss was "caused" by a CFAA violation. *Ground Zero Museum Workshop v. Wilson* 813 F.2d 678, 693(D.Md. 2011). Plaintiff has done neither. Plaintiff offers no facts or allegations of any value, or anything that totals an amount exceeding $5,000.00. Indeed, Plaintiff only alleges a one-time access by Defendant of Plaintiff's website content and that Plaintiff passed the access information and content on to others without any specific allegations regarding his having done so. See, Complaint ¶¶ 21, 29.

Moreover, CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment and restoring the data program, system, or any information to its condition prior to the offense, and any revenue lost, cost incurred, or any other consequential damages incurred *because of interruption of service*." (§1030 (e)(11)) (emphasis added). Here, Plaintiff claims that its losses primarily consist of lost fees that it would have received for the downloaded content but for Defendant's actions. Complaint at ¶ 29. Lost sales and profit are not the measure of loss under the CFAA. *Cassetica Software, Inc v. Computer Sciences Corp.*, 2009 WL 1703015 (N. D. Ill. 2009). To state a claim of "loss" under the CFAA's definition thereof, the alleged loss must relate to the investigation or repair of a computer system following a violation that caused impairment or unavailability of data. *Id.* at *4. Therefore, courts have found that costs not related to the impairment or damage to a computer or computer system

---

any department or agency of the United States; (a)(3) involves accessing a nonpublic computer of a department or agency of the United States; (a)(4) involves accessing a "protected computer" which is defined as a computer "exclusively for the use of a financial institute or United States Government" or used on their behalf; similarly (a)(5)-(7) are inapplicable here.

are not cognizable "losses" under the CFAA.  *Id.* *4, ***SKF USA, Inc. v. Bjerkness***, 636 F.Supp. 696, 721 (N.D. Ill. 2009) (where court held that lost revenue caused by copying confidential information not compensable "loss" under CFAA.")  Thus, economic costs unrelated to computer *systems* do not fall within the terms of the statutory definition.  Similarly, economic losses such as membership fees, are unrelated to the computer system and do not fall within the statutory definition.  *Garelli,* 551 F.2d at 711.  Here, Plaintiff has not pleaded a "loss" compensable under the CFAA.

Likewise, the Complaint fails to identify the damage that was allegedly caused by the access.  Critically absent from the Complaint are allegations that Defendant's alleged unauthorized access to the Plaintiff's website content resulted in lost data, the inability to offer the website content to other customers , or that the access in any other way affected the computer system or Plaintiff's ability to offer downloads of its content to its customers.  *Cassetica*, at *3.  Instead, Plaintiff only alleges that improper downloading of its content occurred.  Therefore, Plaintiff has failed to properly allege such downloads caused loss or damage within the meaning of the CFAA, and Count I must therefore be dismissed.

**2.     Plaintiff's State Law Claims Are Preempted by the Copyright Act.**

Plaintiff's state law claims assert the same interests as those under the ***Copyright Act*** (17 U.S.C. §§ 101 et al), *to wit*, to control the reproduction and distribution of content. ***Daboub v. Gibbons***, 42 F.3d 285, 289 (5th Cir. 1995) (finding all of the plaintiffs' state law claims preempted because "[t]he core of each of these state law theories of recovery... is the same: the wrongful copying, distribution, and performance of the [work]").  The Copyright Act preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" and which relate to the content fixed "in a tangible medium

of expression and come within the subject matter of copyright as specified by sections 102 and 103." 17 U.S.C. § 301(a). Indeed, though the Copyright Act is not pled, Plaintiff invokes remedies exclusive to the Act, necessitating preemption.[8] See, **Personal Keepsakes, Inc. v. PersonalizationMall.Com, Inc.**, 2012 WL 414803 *8 (N.D. Ill. Feb. 8, 2012) (dismissing as preempted state law claims that "are simply copyright claims in different clothing.").

Computer software and data are "fixed in a tangible medium of expression". **Cassetica Software**, at *5, citing, **ProCD, Inc. v. Zeidenberg**, 86 F.3d 1447, 1453 (7th Cir. 1996). The Complaint's state law claims allege that Defendant "gained access to Plaintiff's website and *disseminated* that access information to other unauthorized individuals." See e.g., Complaint, ¶ 34 (emphasis added). The claims, then, are focused on Defendant's alleged unauthorized access and dissemination, of the protected content.[9] That content – pornographic films – is within the subject matter of copyright. Similarly, to **Cassetica**, where the state law claims were based entirely upon the defendant's unauthorized downloads of the plaintiff's software, because reproduction and distribution are rights under the Copyright Act, the state claims are preempted. Counts II through V must be dismissed.

---

[8] *See*, Complaint, Prayers for Relief, (3) ("Order of impoundment under 17 U.S.C. §§ 503 & 509(a) ..."). Plaintiff also seeks an award of "attorneys' fees, litigation expenses (including fees and costs of expert witnesses), and other costs of this action." This is contrary to the American Rule, but is provided for in 17 U.S.C. § 505.

[9] "[S]tate laws that intrude on the domain of copyright are preempted even if the particular expression is neither copyrighted nor copyrightable." **Toney v. L'Oreal USA, Inc.**, 406 F.3d 905, 911 (7th Cir. 2005); Ho v. Taflove, 648 F. 3d 489, 501 (7th Cir. 2011).

### 3. Plaintiff's Claim for Conversion Must Be Dismissed.

If the Court does not find the state law claims of Plaintiff's Complaint are preempted, then it must nevertheless dismiss Count II for failure to state a claim.

To establish a cause of action for conversion, a plaintiff must prove by a preponderance of the evidence that: (1) the plaintiff has a right to the property; (2) the plaintiff has an absolute and unconditional right to the immediate possession of the property; (3) the plaintiff made a demand for possession;[10] and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Cirrincione v. Johnson*, 184 Ill.2d 109, 114 (1998).

To satisfy the fourth element of conversion, the Plaintiff is required to prove that Defendant exercised control over the property in a manner inconsistent with the Plaintiff's right of possession. *Illinois Jurisprudence, Personal Injury and Torts* § 10:07. There can be no wrongful assertion of dominion or control where the property is voluntarily transferred to the defendant by the plaintiff, even if the transfer was done by mistake. *Illinois Jurisprudence, Personal Injury and Torts* § 10:10. Here, the Plaintiff knew its password(s) were compromised, but voluntarily allowed alleged infringers to use the password(s) and download content. Complaint, ¶ 12. Furthermore, intangible property, like the content in question, can be the subject of conversion only if it is merged into a tangible document over which the alleged defendant

---

[10] The cases are divided as to whether an allegation of demand and refusal is always necessary to maintain a cause of action for conversion. (Compare *Jensen v. Chicago & Western Indiana R.R. Co.*, (1981), 94 Ill. App.3d 915, 933, with *Hoffman v. Allstate Insurance Co.*, (1980), 85 Ill. App.3d 631, 633-34)

exercised dominion or ownership.[11] *The Film and Tape Works, Inc. v. Junetwenty Films, Inc.*, 368 Ill. App. 3d 462 (1st Dist. 2006).[12] Plaintiff has not alleged such tangible, physical conversion.

### 4.  Plaintiff's Complaint Fails to State a Claim for Unjust Enrichment.

If the Court does not find the state law claims of Plaintiff's Complaint are preempted, then it must nevertheless dismiss Count III for failure to state a claim.

"[T]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the Plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).

---

[11]  Indeed, the nature of intangible property means that the owner is never without possession. *Ho v. Taflove*, 696 F. Supp. 2d 950, 957 (N.D. Ill. 2010) (Regarding conversion of intangible property, the court noted that there was no evidence that the defendants prevented plaintiffs "from conducting, controlling, accessing, using, or publishing their research.").

[12]  Types of intangible property that Illinois courts have recognized as merging into a specific document to satisfy the property requirement for conversion are valuable papers, or evidences of title to real or personal property for checks, promissory notes, bank bills, bonds, bills of exchange, drafts, certificates of stock in incorporated companies, securities of any kind, books of account, vouchers, and the like. *Film and Tape Works, Inc.* at 462.

If an unjust enrichment claim rests on the same improper conduct alleged in another claim,[13] then the unjust enrichment will stand or fall with the related claim. See, e.g., ***Ass'n Benefit Servs., v. Caremark Rx, Inc***., 493 F.3d 841, 855 (7th Cir. 2007). See also, ***Martis v. Grinnell Mut. Reinsurance Co***. 905 N.E.2d 920, 928 (Ill. App. 2009). Here, Plaintiff knew of the compromised password(s) but still allowed access to its websites and content. Where the underlying claim for fraud is deficient, the courts have dismissed claims for unjust enrichment. See, e.g., ***Mosiman v. BMW Fin. Servs. NA, Inc***., 321 Ill.App.3d 386, 392, 748 N.E.2d 313, 318 (2001). In addition, as explained above, unjust enrichment claims are also preempted by the Copyright Act. ***Toney v. L'Oreal USA, Inc.***, 406 F.3d 905, 909 (7th Cir. 2005).

Plaintiff contends it was denied "compensation for the services and content provided by Plaintiff."[14] Complaint, ¶ 38 (emphasis added). Unjust enrichment does not seek to compensate a plaintiff for loss or damages suffered, but seeks to disgorge a benefit that the defendant unjustly retains. ***HPI Health Care Servs***. at 678 ("a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment"). Compensation for services goes to damages or loss, not the disgorgement of a benefit[15]. Plaintiff does not allege that Defendant received any

---

[13] *See, e.g.,* ***Lewis v. Lead Indus. Ass'n***, 793 N.E.2d 869, 877 (Ill. App. 2003). ("In order for a cause of action for unjust enrichment to exist, there must be some independent basis which establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty.").

[14] Plaintiff also claims "reputational harm." Complaint, ¶ 39. This is an element of defamation not unjust enrichment. Nor has Plaintiff in any way explained how it has suffered reputational harm.

[15] The fact that a person benefits another is not of itself sufficient to require the other to make restitution. ***Hayes v. Mechanical, Inc. v. First Indus., L.P.***, 351 Ill. App. 3d (1st Dist. 2004).

compensation or other benefit that is capable of disgorgement (unless Plaintiff contends viewing pornographic material is an "enriching" experience). Thus, Plaintiff fails to state a claim.

Lastly, a plaintiff can have either a breach of contract claim or an unjust enrichment claim, but not both. Recovery under a theory of unjust enrichment is based on a contract implied in law. ***Wheeler-Dealer, Ltd. v. Christ***, 379 Ill.App.3d 864, 872 (1st Dist. 2008). Yet, Plaintiff argues the existence of a contract between itself and Defendant. If taken as true, where the parties' relationship is governed by a contract, the doctrine of unjust enrichment is not applicable. ***Id.*** *See also*, ***Shaw v. Hyatt Intl Corp.***, 461 F.3d 899, 902 (7th Cir. 2006), *citing*, ***Guinn v. Hoskins Chevrolet***, 836 N.E.2d 681, 704 (1st Dist. 2005).

### 5. Plaintiff's Complaint Fails to State a Claim for Breach of Contract.

If the Court does not find the state law claims of Plaintiff's Complaint are preempted, then it must nevertheless dismiss Count IV for failure to state a claim.

A breach of contract claim has four elements: (1) the existence of a valid and enforceable contract; (2) the plaintiff's performance; (3) the defendant's breach; and (4) the plaintiff's resulting injury. ***Fabrica de Tejidos Imperial, S.A. v. Brandon Apparel Group, Inc***., 218 F Supp. 2d 974, 976 (N.D.Ill. (N.D. Ill. 2002); ***Finch v. Ill. Community College Board***, 315 III. App.3d 831, 734 N.E.2d 106 (2000). Where Plaintiff alleges unauthorized access, it defeats any claim of "meeting of the minds" that would make a contract enforceable. "[A] contract includes only the terms which the parties have agreed." ***ProCD, Inc. v. Zeidenberg***, 86 F.3d 1447, 1450 (7th Cir. 1996).

To access Plaintiff's website(s), Plaintiff claims users must state that they agree with the following statement:

> "I have come to this website knowing it's [sic] contents and agree to view sexually explicit material for my personal use. Viewing such material does not knowingly violate the community standards of the area in which I live."

Complaint, ¶ 42

Plaintiff asserts Defendant violated this agreement by disseminating the downloaded content to other individuals. Complaint, ¶ 45. Yet, the software used by the Plaintiff to track infringers offers no basis for claiming such dissemination. Nor does Plaintiff allege any facts supporting its bold assertions that Defendant disseminated either "access information" or downloaded content to anyone else.[16] Upon information and belief, the software identifies only the websites accessed, the content being viewed and downloaded, and the date and time of the activity.

In the alternative, Plaintiff argues Defendant breached the contract by knowingly violating the community standard where he lives, because "violations of the law are presumably a violation of the community standards." Complaint ¶ 46 (emphasis added). However, the plain language of the agreement clearly predicates a breach on "viewing" such pornographic material and not "knowingly" violating the community standards, unrelated to viewing pornography. Again, Plaintiff fails to state of claim.

---

[16]   In fact, Plaintiff's Count V for negligence, in which it asserts Defendant was negligent for allowing a third party to use his internet connection to access Plaintiff's website makes clear that Plaintiff has no evidence that Defendant even accessed its site, much less that he then disseminated access information or downloaded content to one or more third parties.

15

### 6. Plaintiff's Complaint Fails to State a Claim for Negligence.

If the Court does not find the state law claims of Plaintiff's Complaint are preempted, then it must nevertheless dismiss Count V for failure to state a claim.

As explained above in the Technical Background section of this Brief, Plaintiff makes repeated, bold assertions that Defendant disseminated access information and downloaded content to other unnamed individuals without alleging any facts to support such allegation. (Complaint ¶¶ 12, 13, 27, 34, 45, 52, 53). As explained above, the Plaintiff's tracking software identified only the website accessed, the content being viewed and downloaded and the date and time of the activity. It is pure speculation that such initial unauthorized access resulted in third-party infringement. The negligent count should be dismissed on this ground alone.

Nevertheless, we will address Plaintiff's alternative claims in Count V that Defendant was negligent in this regard. Plaintiff alleges, first, on information and belief, that Defendant "had a duty to secure his Internet connection" and breached that duty by "failing to secure his Internet connection." (Complaint, ¶ 50). Moreover, Plaintiff alleges that Defendant allowed for "illegal use" of his "Internet access accounts" and such activity "constitutes a breach of the ordinary care that a reasonable Internet account holder would do under like circumstances." (¶ 51). Plaintiff alleges, secondly that, although Defendant did secure his Internet connection, he permitted a third-party to use it to hack into and disseminate Plaintiff's content and that Defendant knew, or should have known, that this activity was illegal. (¶ 52). In the third alternative, Plaintiff alleges that Defendant was complicit in such unknown, third-party's illegal activities. (¶ 53). Primarily, however, Plaintiff alleges in this claim that Defendant failed in his duty to secure his Internet connection. (¶¶ 54-57). Plaintiff claims that it has suffered "financial harm" by having "others"

16

"unlawfully copy and share Plaintiff's private website content" and "unlawfully interfering with Plaintiff's exclusive rights." (¶ 58).

To establish a claim for negligence a plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty and (3) that defendant's breach was the proximate cause of the plaintiff's injury. **Nunez v. Horwitz**, 563 N.E.2d 946 (Ill.App. 1st Dist. 1990). As for the first element – duty -- a long-standing rule exists in Illinois law that civil liability for the criminal acts of third parties will not be imposed unless there is a special relationship between the parties. The Illinois Supreme Court has, indeed, recognized such a rule. See, *e.g.,* **Estate of Johnson v. Condell Memorial Hospital***,* 119 Ill.2d 496, 503, 520 N.E.2d 37 (1988) (stating that, in general, one has no duty to control the conduct of another to prevent him from causing harm to a third party, absent a special relationship with either the person causing the harm or the injured party). See also, **Restatement (Second) of Torts** §§ 315 through 321 (1965) (duty to control conduct of third persons). The existence of a special relationship goes to the question of duty. Without such a duty, Defendant cannot be negligent to Plaintiff due to the conduct of such unknown third-parties. Here, there is no allegation of fact which would give rise to such a special duty.

Even if Plaintiff is able to surmount the hurdle of the absence of any duty, Plaintiff cannot properly allege proximate cause, as a matter of law. The term "proximate cause" encompasses two distinct requirements: cause in fact and legal cause. The first requirement, cause in fact, is present "when there is a reasonable certainty that a defendant's acts caused the injury or damage." **Young v. Bryco Arms**, 213 Ill. 2d 433, 446-47, 821 N.E.2d 1078, 1085-86 (2004) (citations omitted). As the court explained in **Young***, to wit:*

> In deciding this question, we first ask whether the injury would have

occurred absent the defendant's conduct. (Internal citations omitted). In addition, when, as here, there are multiple factors that may have combined to cause the injury, we ask whether defendant's conduct was a material element and a substantial factor in bringing about the injury.

The second requirement, legal cause, is established only if the defendant's conduct is "'so closely tied to the plaintiff's injury that he should be held legally responsible for it.'" (citations omitted). The question is one of public policy—how far should a defendant's legal responsibility extend for conduct that did, in fact, cause the harm? See W. Keeton, *Prosser & Keeton on Torts* § 41, at 264 (5th ed. 1984) ("As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy"). The proper inquiry regarding legal cause involves an assessment of foreseeability, in which we ask whether the injury is of a type that a reasonable person would see as a likely result of his conduct.

Although proximate cause is generally a question of fact, the lack of proximate cause may be determined by the court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause. *Id.* As a consequence, here, the facts alleged do not sufficiently demonstrate proximate cause. Specifically, Defendant's alleged conduct in failing to secure his Internet connection is not a legal cause, even assuming Plaintiff's harm, because the alleged resulting harm caused by one individual not securing his Internet connection and having

18

unknown, speculative interlopers download and disseminate Plaintiff's website content, is the result of numerous unforeseeable intervening acts by unknown third parties not under Defendant's control.  Thus, Count V also fails to state a claim and must be dismissed.

### III. CONCLUSION

The above premises considered, Defendant Lucas Shashek prays that this Court dismiss Plaintiff's Complaint at its costs, and for such other and further relief as the Court deems just and proper under the circumstances.

>                       DANNA MCKITRICK, P.C.
>
> BY:    /s/ Laura Gerdes Long_____
>        Michael J. McKitrick, #1853732
>        David R. Bohm, MBE #35166
>        Laura Gerdes Long, # 6211998
>        7701 Forsyth Blvd., Suite 800
>        St. Louis, MO  63105-3907
>        (314) 726-1000/(314) 725-6592 fax
>        E-Mail:  llong@dmfirm.com
>        ATTORNEYS FOR DEFENDANT

### CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2012, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Paul Duffy, Esq.
Prenda Law, Inc.
161 N. Clark Street, Suite 3200
Chicago, IL  60601

>    /s/ Laura Gerdes Long_____

12795-0112: Shashek, Lucas/Lightspeed Media Corp.: 558634.doc